UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE
———————————————————————X

JAMES H. BRADY,

           *Plaintiff*,

   v.

7HOPS.COM INC., d/b/a STATIC MEDIA, d/b/a
NICKI SWIFT, and BARBARA PAVONE,

           *Defendants*.

———————————————————————X

INDEX No. **23 - 1 0 7 8**

**COMPLAINT**

**JURY DEMAND**

FILED
SEP 29 2023
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Plaintiff James H. Brady complains as follows:

## PRELIMINARY STATEMENT

1.    This is an action that arises from the false, libelous, and defamatory *per se* statements contained in a news story published by Defendants 7HOPS.COM Inc., d/b/a Static Media, d/b/a  Nicki Swift and written by Barbara Pavone on September 30, 2022 about Plaintiff James H. Brady.

2.    On September 30, 2022, Nicki Swift posted the article that is the subject of this Complaint, titled **"The Truth About Judge Judy's Children,"** written by Barbara Pavone. (Exhibit 1).  The article purports to be a truthful account of the lives of celebrity Judge Judy Sheindlin and her  children but is actually a very thinly veiled public

1

relations piece designed to smear and defame Plaintiff as part of a broader civil conspiracy against Plaintiff Brady.

3.      The long article begins with stories about Judge Judy, then proceeds to speak about Judge Judy's biological son Adam Levy and his defamation lawsuit, before moving on to Gregory Sheindlin.

4.      The September 30,2022 article then defames Plaintiff Brady by reporting as true a totally false and defamatory version of a series of events in which Gregory Sheindlin is made out to be the victim of Plaintiff's malfeasance and aggression, when in truth it is Plaintiff Brady who has been victimized by a criminal scheme masterminded by Gregory Sheindlin and his landlord tenant Philippe Ifrah from IGS Realty in Manhattan New York.

5.      It is obvious and the facts prove nothing in the story is truthful and that Brady  has been subjected to a concerted smear campaign that is most likely  the result of Mr. Sheindlin's powerful stepmothers mother's influence in the media.

6.      The story Nicki Swift ran on September 30, 2022 **"The Truth About Judge Judy's Children,"** was authored by Barbara Pavone, and, as Brady's evidence proves, was part of the civil conspiracy against Plaintiff, who is a private citizen and not a public figure.

7.      The civil conspiracy included Nicki Swift and Barbara Pavone advancing as true in their September 30, 2022 story statements made in a New York Post story that

2

appeared on April 2, 2021, even though the statements made in the New York Post story were proven and admitted false by stipulation at Gregory Sheindlin's May 4, 2021 Deposition.

8.      Nicki Swift and Ms. Pavone not only liberally quotes statements that were admitted false at Sheindlin's May 4, 2021 deposition, but also misquotes and misstates what the New York Post article to advance the misinformation and defamation against Brady to their audience of over 18 million readers.

9.      As part of a civil conspiracy both pieces are intentionally designed to defame Plaintiff, cast him in a negative, false light, leave the impression to the reader of his wrongdoing, and misstate the record, all in order to make Mr. Sheindlin look like James H. Brady's innocent victim.

10.     This *Complaint* seeks damages for libel defamation *per se;* punitive damages; civil conspiracy; false light invasion of privacy; and intentional infliction of emotional distress.

## PARTIES

11.     James H. Brady is a private citizen, over 18 years old, and a resident of New Jersey.

12.     7Hops.com Inc., doing business as Static Media, is an internet company incorporated in Delaware and headquartered at 11787 Lantern Road #201,

3

Fishers, Indiana 46038.  Static Media operates numerous entertainment and celebrity oriented websites, including Nicki Swift.

13.   Barbara Pavone is listed as a writer for Nicki Swift on the company's website.

## JURISDICTION AND VENUE

14.   This Court has jurisdiction under Article III of the United States Constitution and 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, exclusive of interests and costs, and there is a diversity of citizenship.

15.   This Court has personal jurisdiction over Nicki Swift because, on information and belief, Defendant's Nicki Swift is owned by "7Hops.com Inc.," which does business as "Static Media," which are incorporated in Delaware and are "a Delaware Corporation."

16.   Venue is proper in this Court under 28 U.S.C. § 1391(3) because Defendants are subject to personal jurisdiction in Delaware.

## FACTUAL ALLEGATIONS

17.   According to its website, Nicki Swift:

Established in 2016 by Static Media and reaching more than 18 million readers worldwide, Nicki Swift is here to give you timely news, fresh perspectives, and exclusive content about celebrity gossip, the royal family, politics, breakups, scandals, high-profile crime, and more with accuracy and edge.

4

We don't just report news, we editorialize it in a way that drives the conversation forward.  That means asking questions that go beyond basic observations to dig into the nitty-gritty of what people are actually talking about.  It also means consulting experts across various fields, including legal analysts, plastic surgeons, royal experts, and celebrity matchmakers to provide our articles with additional context and expert analysis to answer questions you didn't even know you had.

We love to have fun here, but make no mistake: We're serious about our editorial standards.  Our team also works incredibly hard to make sure all of our news coverage is rigorously edited and grounded in facts from verifiable sources, not speculation. We pride ourselves on being a publication that brings a diverse set of voices to our coverage, which is notably sharp and honest, but never mean-spirited or disparaging.

18.    On September 30, 2022, Nicki Swift posted the article that is the subject of this Complaint, titled "**The Truth About Judge Judy's Children**," written by Barbara Pavone. (Exhibit 1).  The article purports to be a truthful account of the lives of celebrity Judge Judy Sheindlin but is actually a public relations piece designed to smear and defame Plaintiff as part of a broader civil conspiracy.

19.    The article's title is the very opposite of the truth.  The long piece begins with stories about Judge Judy, then proceeds to speak about Judge Judy's biological son Adam Levy and his defamation lawsuit, before moving on to stepson Gregory Sheindlin. The article then defames Plaintiff by reporting as true a false version of a series of events in which Gregory Sheindlin is made out to be the victim of Plaintiff's malfeasance and aggression, when in fact it is Plaintiff Brady who has been victimized

by Gregory Sheindlin, and then has been subjected to a concerted smear campaign as a result of Mr. Sheindlin's powerful mother's influence in the media.

20.    At the top of the story, Defendants Nicki Swift and Pavone included an old picture of Gregory Sheindlin looking youthful along with his wife and family.  The picture is to portray Sheindlin as a nice family man rather than the truth that he masterminded  fraud scheme that wiped out my family business and my life savings of over $1.7 million dollars on September 5, 2018.

21.    The article pertaining to Gregory Sheindlin and Brady are shown below in its entirety :

**Gregory Sheindlin was at the center of a headline-making lawsuit**

Like stepbrother Adam Levy, Gregory Sheindlin made news for being at the center of a headline-making lawsuit. The drama began in 2009 when a man named James H. Brady failed to pay his rent and Sheindlin was hired to represent the Manhattan commercial landlord taking Brady to court. According to the New York Post, Brady was found guilty but spent years filing lawsuits to overturn the verdict.

In the end, the rent Brady owed combined with interest and attorneys' fees totaled to a whopping $1.7 million. Ramping up his litigation, Brady sued a lot of defendants, including Sheindlin, claiming that the unanimous guilty verdict was falsified in an effort to defraud him of millions. A court found those claims to be "without merit" and, eventually, Brady had filed so many lawsuits that he was sanctioned in both state and federal courts.

Rather than backing down, he started posting YouTube videos accusing Sheindlin of stealing his life's savings and robbing him of $1.7 million. He also searched for a lawyer on Craigslist, advertising, "Get these photos of Judge Judy's son stealing in press win $$$."

Sheindlin finally had enough and filed a defamation lawsuit against Brady in

2021. He called Brady a "vindictive, disgruntled, serial litigant" and asked the court to remove his videos and forbid him from posting others. Meanwhile, Brady assured the New York Post that all of his claims were true.

22.   Every word in the above story is not only false and defamatory *per se*, but the very opposite of the truth.  The article also makes it appear as if Sheindlin was successful in his defamation lawsuit against Brady in 2021 and that the case is over when that is totally false .

23.   The truth is that Sheindlin was denied summary judgment in *Gregory Sheindlin v. James H. Brady*, 21-cv-1124 (LJL), and the case has been dormant for over a year and a half after Judge Liman refused Mr. Sheindlin's April 2021 emergency motion to have videos on YouTube accusing Sheindlin of stealing over $1.7 million on September 5, 2018 taken down.

24.   Ms. Pavone and Nicki Swift reported as if Sheindlin had been successful, and that the litigation had ended.  The Sheindlin v Brady was presented as being over and as Sheindlin Being victorious when the docket sheet Proves his mothion for summary judgment was denied on March 30,2022 and the case has still not been scheduled for a Jury trial

25.   Nicki Swift and Barbara Pavone represented the case as over knowing the claim was totally  false and so that people would not seek out to follow the actual facts of the case

26.    It was YouTube who took down the videos of Sheindlin's wrongdoing and that of other political connected people themselves without any court order from Judge Liman, further evidence of Judge Judy Sheindlin's influence over media.

27.    The article falsely states there was a "unanimous guilty verdict" against Plaintiff at a June 26, 2015 State Court Jury trial  In truth, Brady was never part of a criminal case, and thus could never and was never found "guilty" of anything.

28.    In its April 2, 2021 article on the litigation between Sheindlin and Brady (Exhibit 2), The New York Post never used the words "guilty" in their own smear campaign, yet the Nicki Swift article twice asserts that the New York Post reported that Brady was found "guilty of owning money to a commercial landlord based on the 2009 success of Judge Judy's stepson Gregory Sheindlin."

29.    The article states: "The drama began in 2009 when a man named James H. Brady failed to pay his rent and Sheindlin was hired to represent the Manhattan commercial landlord taking Brady to court."

30.    The truth is that Sheindlin was not the attorney hired in 2009 to represent IGS Realty.  Sheindlin was hired 8 years later in 2017 to implement a criminal scheme of fraudulently representing though "implication only" that the findings on a three question June 26, 2015 Jury sheet were findings that the personal guarantees that Brady signed with IGS Realty were enforceable, and that the jury had rejected Brady's constructive eviction defense. (Exhibit 3).

31.    All Sheindlin used to steal that $1.7 million dollars from the Brady's are the following sentences from his fraudulent October 26, 2017 Article 52 *Petition*:

> On June 26, 2015, in the IGS Action, a jury unanimously rendered a verdict in favor of IGS's claim and against Brady's counterclaims.

> AND Plaintiff (IGS Realty) having presented all its evidence and rested, and the Defendant (Brady) having presented all its evidence in support of his defenses and having rested, the jury rendered a verdict on June 26, 2015 in favor of Plaintiff against the Defendant, in the sum of $541,758.62, with the statutory rate of interest accruing from May 1, 2009 and the cost of disbursements to Plaintiff.

32.    At Sheindlin's May 4, 2021 deposition in <u>*Sheindlin v. Brady*</u>, 21-cv-1124 (Docket No. 73) (Exhibit 4), he and his attorney Robert Sussman admitted by stipulation that the June 26, 2015 Jury interrogatory sheet that Sheindlin and his client Philippe Ifrah used to collect over $1.7 million dollars from Brady on a personal guarantee never even had any questions pertaining the to subject matter of personal guarantees, nor was the issue of constructive eviction given to the jury.

> **(p. 41-42)** MR. SUSSMAN: Hold on. We both can't speak at the same time. The gentleman has explained to you exactly what he did. It's also in the document. The document speaks for itself. It says nothing about a personal guarantee. That's admitted. We can stipulate to that so we don't have to worry about that.

> **(p.78)** Q. Do you see the jury making a finding pertaining to the <u>constructive eviction defense</u> on that sheet?

> A. As I look at the verified answer with counterclaims, on page 24 where it states within parenthesis -- well, under the third affirmative defense within parenthesis it states constructive eviction. **I do not see** <u>the phrase constructive eviction on the jury's interrogatory</u>.

9

33.     This admission is another reason Sheindlin knew he was lying in the Article

52 Petition because he knew and admitted at his May 4, 2021 Deposition that since the

mandated issue of " constructive eviction was not even on the jury sheet that meant it

was false when he said in his  Article 52 *Petition* that jury ruled in favor of IGS and

"against Brady's counterclaims."

34.     In the IGS case, Judge Ostrager's June 25, 2015 jury instruction clearly

stated that Brady would be relieved of any liability if he could prove he was

constructively evicted, and that the jury would be given that issue for ruling.  Judge

Ostrager stated:

> In determining whether Mr. Brady breached his guarantee for the leases by not
> paying the full rent, you must consider whether Mr. Brady was constructively
> evicted.

> [IGS Realty] claims that the contracts it had with the lessees that were guaranteed
> by Mr. Brady required that Mr. Brady pay the unpaid rents due through October 1,
> 2009, and that Mr. Brady breached the contracts by not paying the rent in full. Mr.
> Brady claims that he was relieved of any obligation to pay rent because he was
> constructively evicted from the premises.

> [IGS Realty] has the burden of proving by a preponderance of the evidence that
> [IGS Realty] had a contract with Mr. Brady for the payment of rent, that [IGS
> Realty] did what it was required to do under the contract [,] [t]hat Mr. Brady
> breached the contract by not doing what he was required to do under the contract,
> and that [IGS Realty] sustained damages because of Mr. Brady's breach.

In determining whether Mr. Brady breached his guarantee for the lease by not paying the full rent, you must consider whether Mr. Brady was constructively evicted from the premises pursuant to the instructions that I will give you. *IGS Realty I*, Trial Tr. at 407–08.

35.    Despite none of these multiple-step questions being asked of the Jury in its three question Jury interrogatory sheet, Brady was forced to pay IGS as if a judgment had been entered against him because of Sheindlin's fraudulent lies in his Article 52 *Petition*

36.    . That fraud scheme of misrepresenting through implication that the jury had ruled that the personal guarantees were enforceable is why Mr. Sheindlin was brought into the case eight years after its commencement yet Nicki Swift and Barbara Pavone tell their 18 million readers that James H. Brady was found guilty of owing $1.7 million dollars because of Sheindlin's success in 2009 as a litigator for a commercial landlord in New York.

37.    The stipulated admissions shown again below prove that there is a civil conspiracy when Nicki Swift and the New York Post to both advance the narrative that Sheindlin is the victim of Brady when in fact it was Sheindlin who victimized Plaintiff by falsifying the outcome of the jury sheet on the October 26, 2017 Article 52 Petition.

38.    The stipulations made at Sheindlin's May 4, 2021 deposition include the following:

**(p. 41-42)** MR. SUSSMAN: Hold on.  We both can't speak at the same time.  The gentleman has explained to you exactly what he did.  It's also in the document.

11

The document speaks for itself. It says nothing about a personal guarantee. That's admitted. We can stipulate to that so we don't have to worry about that.

**(p.78)** Q. Do you see the jury making a finding pertaining to the <u>constructive eviction defense</u> on that sheet?

A. As I look at the verified answer with counterclaims, on page 24 where it states within parenthesis -- well, under the third affirmative defense within parenthesis it states constructive eviction. **I do not see** <u>the phrase constructive eviction on the jury's interrogatory.</u>

MR. SUSSMAN: Here's what we can do. Why don't we <u>stipulate</u> to the fact that the jury interrogatory says what it says, meaning <u>that a number of your defenses as you put them in your answer, your verified answer, are not specifically stated or set forth on the jury interrogatory sheet</u>. That's what we can all agree on. (P. 86-87).

39.   26 USC App Rule 91 holds that "A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation."

40.   The First Circuit holds that "a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir.1992).

41.   "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995).

42.     Defendants ignored their obligation to investigate the truth of their claims. Defendants' published the statements with knowledge of their falsity or reckless disregard of their falsity.

**II.**

43.     It is a cruel totally false and defamatory statement when the Nicki Swift story said "According to the New York Post, Brady was found guilty but spent years filing lawsuits to overturn the verdict."

44.     First, the New York Post's April 2, 2021 story was itself the first misinformation campaign against Brady and on behalf of Sheindlin, but even the New York Post never used the defamatory and libelous word "guilty."

45.     Second, subsequent to the New York Post's April 2, 2021 story, Sheindlin and his attorney Robert Sussman stipulated under oath at Sheindlin's May 4 ,2021 deposition that the June 26, 2015 state court Jury Sheet, which Sheindlin used as the basis to collect over $1.7 million dollars from Brady on a personal guarantee, never even had any questions pertaining to personal guarantees or the mandated issue of constructive eviction. Yet Nicki Swift and Barbara Pavone wrote in a September 20, 2023 story a totally false article that has caused shame, embarrassment, humiliation and severe emotional distress  to Brady and his family .

46.     Third, since there was never even a question pertaining to personal guarantees on the June 26, 2015 State Court Jury Interrogatory Sheet, that means it is

13

false and defamatory for Nicki Swift to state that: "According to the New York Post, Brady was found guilty but spent years filing lawsuits to overturn the verdict."

47.    It is similarly untrue, libelous, and defamatory per se when Nicki Swift states as true that "In the end, the rent Brady owed combined with interest and attorneys' fees totaled to a whopping $1.7 million."

48.    The truth as admitted under stipulation by Sheindlin  is there was never a jury finding that Brady owed any rent at all to IGS Realty since there was never even a question that pertained to the personal guarantees on the three question jury sheet, and since there was never a question pertaining to Brady's constructive eviction defense on the jury sheet even though the court said in its instructions that the issue needed to be presented to a jury and found in the landlord's favor against Brady in order for the the landlord to collect.

49.    Robert Fass was the trial attorney for IGS Realty at the June 2025 State Court jury trial refused to make the fraudulent misrepresentations made by Gregory Sheindlin in his Article 52 *Petition*

50.    The stipulated truth is Gregory Sheindlin is the attorney who submitted the fraudulent Article 52 Petition that asserted that the jury had ruled the personal guarantees were enforceable and that they ruled against Brady's defenses yet  as part of a civil conspiracy the New York Post and its reporter and Nicki Swift and its reporter

completely make Gregory Sheindlin appear as the victim of a deranged private citizen named James H. Brady.

51.    The New York Post and its reporter Kathianne Boniello, and Nicki Swift and its reporter Barbara Pavone knew the admitted fact is Gregory Sheindlin was the attorney brought in to misrepresent through "implication" that Question One on the Jury interrogatory sheet was a finding that the personal guarantees were enforceable and was a rejection of Brady's defenses yet both publications falsely portray Brady as the villain and Sheindlin as the victim .

52.    At the exact same time that Sheindlin was making these false claims in his Article 52 *Petition*, Robert Fass was admitting in court papers that Question One was actually a jury finding that Brady's corporate tenants were using the demised premises as meeting banquet halls as opposed to meeting halls.

53.    In his January 5, 2018 OPPOSITION TO DEFENDANT- APPELLANT'S MOTION FOR LEAVE TO APPEAL, Robert Fass, IGS Realty's other attorney, admitted that Question No. 1 of the Interrogatories pertained to a finding of whether Plaintiff's corporate tenants were operating as meeting halls or banquet halls, which had absolutely nothing to do with whether or not the Personal Guarantees were enforceable. This fact is proven by a reading of the headings from Robert Fass as shown below:

> "THE COURT'S JURY CHARGE REGARDING THE DIFFERENCE BETWEEN 'MEETING FACILITIES' AND 'BANQUET FACILITIES' WAS CORRECT UNDER THE APPLICABLE PROVISIONS OF THE NEW YORK CITY ZONING RESOLUTION AND BUILDING CODE"

On page 7, Mr. Fass wrote the following heading:

"DEFENDANT- APPELLANT WAS NOT SURPRISED BY THE FACT THAT
THE LEGALITY OF HIS USE WOULD BE LITIGATED"

And on page 9 Mr. Fass had the following heading:

"THE APPELLATE DIVISION DID NOT REVERSE THE JURY FINDING
THAT THE DEFENDANT- APPELLANT WAS OPERATING AS AN
ILLEGAL BANQUET FACILITY"

54.     Just like Robert Fass, Sheindlin knew Question No. 1 did not find

that Brady was liable to IGS Realty, and that Questions Number Two and Three

were not findings rejecting Brady's defenses to the personal guarantees. Yet

Sheindlin committed fraud on the New York State Courts by using these three

jury findings as the false instruments to force the sale of Brady's business and to

pay IGS Realty over $1.7 million dollars on September 5, 2018.

55.     Robert Fass knew the personal guarantees had been voided by the

landlord's actions after Brady had signed the leases. Fass's June 26, 2015 closing

arguments included the following admissions of what the Landlord did after the

leases were signed:

> "So let's being at the beginning. In 2001 Mr. Ifrah placed an ad in the New
> York Times. He (Brady) goes to the space, checks it out, and puts a deposit
> down a check on one of the spaces. Then speaks with his father who has
> great experience in real estate who tells him this is in the special garment
> district for zoning, so he better check out whether his use is permitted.

> "So he puts a stop on the check and tells Mr. Ifrah he wants to do his due
> diligence, which he does. And he checks the whole building from top to

bottom, legal and physical conditions, and concludes that everything is fine. The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition. So then he writes another check and rents the space. After that in the same year and the following year he rents two other spaces.

"He also gets permits to construct meeting halls representing to the Building Department it's on the section that covers meeting halls, section of the regulation. And he gets public assembly permits also for meeting hall use. The last certificate of occupancy that he got expired in 2007."

56.    These admissions alone in court  by Robert Fass prove that the personal guarantees were voided as a matter of law and public policy, which means Sheindlin committed fraud when he asserted " through implication in his Article 52 *Petition* that there was a jury  verdict against Plaintiff.

57.    A guaranty must be construed "in the strictest manner" (*White Rose Food v. Saleh*, 99 NY2d 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to perform. An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. See *White Rose Food v Saleh*, 99 NY2d 589 [2003]; *Davimos v Halle*, 35 AD3d 270 [2006.]).

58.    "There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal.  In other words, the guarantor may always

assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213)."

59.    "A guarantee will not be enforced where the modification"…impermissibly increased [guarantor's" risk] without his consent…. *White Rose Food*, 99 NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp.*, 50 AD3d 933, 934 9 (First Dept 2008) (refusing to enforce guarantee of commercial lease where underlying lease was modified).

60.    The law is also clear that "The consideration for a bilateral contract, in which promises are exchanged, is the acts that are mutually promised." *Kowalchuk v Stroup*, 61 AD3d 118 (1st Dept 2009).

61.    "When the contract is bilateral, the contract is lacking in consideration unless both parties are bound, so that either can sue the other for breach." *Oscar Schlegel Mfg. Co. v Peter Cooper's Glue Factory*, 231 NY 459 (1921).

62.    "Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound." *Reddy v Mihos*, 2018 NY Slip Op 02565, Appellate Division, First Department (April 17, 2018).

## III.

63.    Nicki Swift's September 30, 2022 article also stated "Ramping up his litigation, Brady sued a lot of defendants, including Sheindlin, claiming that the unanimous guilty verdict was falsified in an effort to defraud him of millions."

64.     As was admitted by Sheindlin on May 4 2021 there never  was a verdict against Brady so its false and defamatory when Nicki Swift said Brady was trying to reverse  "a unanimous guilty verdict [that] was falsified in an effort to defraud him of millions."

65.     The truth is Brady said that there was never a jury verdict question that even said anything about personal guarantees, and that it was a criminal fraud scheme between Gregory Sheindlin and IGS landlord Philippe Ifrah to fraudulently represent "through implication" that the Jury ruled that the personal guarantees were enforceable.  It was false and defamatory for Nicki Swift to repeatedly assert that there was a unanimous jury guilty verdict against Brady when they know there was absolutely no basis for the claim.

66.     It was further false, defamatory per se, and libelous when Nicki Swift stated in its article: "A court found those claims to be "without merit" and, eventually, Brady had filed so many lawsuits that he was sanctioned in both state and federal courts."

67.     The evidence proves that federal judges in New York misrepresented Brady's argument and implemented filing injunctions in order to cover-up two crimes on behalf of politically-connected, powerful individuals, New York City developer Jeffrey Katz and Judge Judy's stepson Gregory Sheindlin.

68.     The first crime that the filing injunctions are meant to protect for the benefit of New York City developer Jeffery Katz of  Sherwood Equities is the honest services

19

fraud scheme of completely ignoring Brady's 1980 Offering Plan Contract and higher

Appellate Court Decision from February 11, 2010, and unconstitutionally and

unlawfully replacing them with a lower New York Supreme Court decision from July

15, 2014, which voided what these governing decisions said on their face.  This fact is

shown below.

69.    The Seventh Paragraph Footnote to the Schedule of Units reads as follows:

"Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in
addition to the utilization of the roof, the  right to construct or extend structures on
the roof or above the same, to the extent that may from time to time be permitted
under applicable law."

70.    The Appellate Division, First Department, February 11, 2010 Decision

ended with the following words:

Pursuant to paragraph 7, that plaintiffs have the right to construct or extend
structures upon the roof or above the same to the extent that may from time to
time be permitted under applicable law, unanimously affirmed, without costs.

71.    Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the

above to read:

It has already been adjudged that while the owners of the unit *may* have the right
to erect additional structures on the roof, that right does not entitle them to use
any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 &
*4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right
to use all or any part of the TDRs in connection with such construction or
extension"] *Brady v 450 W. 31st St. Owner's Corp.*, 70 AD3d 469, 470 [1st Dept
2010] [holding that the offering plan "reserves for plaintiffs the right.... to
construct or extend structures on the roof that may be built without the use of the
building's development rights."]

72.    Every word from the higher court determination was taken out and replaced by Judge Kornreich.  Under the Appellate Division decision, I have the right to the utilization of the premise's development rights.

73.    The second crime the filing injunctions are meant to cover-up is Gregory Sheindlin's crime discussed throughout this *Complaint*, in which he falsified a jury verdict as if it were a judgment against Plaintiff by fraudulently misrepresenting "through implication" that a State Court Jury ruled on their three question June 26, 2015 New York State Jury interrogatory sheets that the personal guarantees with IGS Realty were enforceable, when Sheindlin and his client Philippe Ifrah knew there was never even a question pertaining to the personal guarantees on the three-question June 26, 2015 jury interrogatory sheet; resulting in the forced sale of Plaintiff's 12th Floor and Roof Unit commercial apartment in New York City.

74.    The filing injunctions were also imposed as retribution against Plaintiff for creating the website bullyjudges.com in 2012 (changed to bullyjudgesny.com after the domain name bullyjudges.com accidentally lapsed around 2020).

75.    On March 7, 2023, YouTube took down Brady's channel in its entirety to silence Brady about this crime and others against Brady for the benefit of politically-connected people like Judge Judy Sheindlin and a New York City developer Jeffrey Katz.

**IV.**

76. The evidence proves clearly that Brady never said "the unanimous guilty verdict was falsified." Brady has always said that there was never even a question pertaining to personal guarantees on the three question Jury Interrogatory Sheet, which means there never could have been a finding that Brady was "guilty" of owing the landlord on a personal guarantee. Since there was never a jury verdict against Brady on the issue personal guarantees, that means it is totally false to claim that Brady spent years trying to reverse the jury's unanimous "guilty" verdict.

77. Barbara Pavone's September 30, 2022 article continues:

Rather than backing down, he started posting YouTube videos accusing Sheindlin of stealing his life's savings and robbing him of $1.7 million. He also searched for a lawyer on Craigslist, advertising, "Get these photos of Judge Judy's son stealing in press win $$$."

78. Sheindlin's own stipulation admissions prove it is true that Sheindlin did steal Brady's like savings of over $1.7 million dollars yet Nicki Swift makes this claim look like its false when its true. What the Craigslist advert does show is the great imbalance in power and influence between Mr. Sheindlin and his step-mother Judge Judy Sheindlin, and Mr. Brady who now has been victimized twice by Mr. Sheindlin, first defrauded of $1.7 million, and then the victim of a smear campaign in the media against him.

79. Nicki Swift's September 30, 2022 article continues:

Sheindlin finally had enough and filed a defamation lawsuit against Brady in 2021. He called Brady a "vindictive, disgruntled, serial litigant" and asked the

22

court to remove his videos and forbid him from posting others. Meanwhile, Brady assured the New York Post that all of his claims were true.

80.     Brady never "assured the New York Post that his claims were true."  Brady never spoke to the New York Post since the New York Post was not interested in letting Brady defend himself against the misinformation smear campaign that was on its face presenting Sheindlin as a commercial landlord lawyer who was hired by the landlord in 2009 and won a personal guarantee case against Brady, when none of this information was true.

## FIRST CAUSE OF ACTION
## CIVIL CONSPIRACY

81.     Plaintiff repeats, reiterates and re-alleges the above paragraphs as though they were set-forth at length and in their entirety herein.

82.     "To establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: an agreement between two or more parties; an overt act in furtherance of the agreement; the parties' intentional participation in the furtherance of a plan or purpose; and resulting damage or injury." *Cohen Bros. Realty Corp. v. Mapes*, 181 A.D.3d 401, 404 (1st Dep't 2020).

83.     Each of the four elements is satisfied in the present case.

## SECOND CAUSE OF ACTION
## LIBEL

23

84.   Plaintiff repeats, reiterates and re-alleges the above paragraphs as though they were set-forth at length and in their entirety herein.

85.   28 U.S.C. §4101 defines "Defamation" as "any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."

86.   To prove prima facie defamation, a plaintiff must show four things: 1) a false statement purporting to be fact; 2) publication or communication of that statement to a third person; 3) fault amounting to at least negligence; and 4) damages, or some harm caused to the reputation of the person or entity who is the subject.

87.   In the State of Indiana, defamation is a common law offense that can be broken down into four distinct elements: a statement with defamatory imputation, malice, publication, and damages. To establish defamation, a plaintiff must show that a statement was made that would tend to lower a person's reputation in the community, the speaker knew the statement to be false or made it with a reckless disregard for the truth, it was communicated to another person and it caused damages.

88.   Pursuant to Model Code Title 34., "In an action for libel or slander, it is sufficient to state generally that the defamatory matter published or spoken was about the plaintiff."

24

89.     Defendants Nicki Swift's statements in the article constitute libel per se, for which James H. Brady is entitled to recover presumed damages for injury.  Defendants' statements also constitute libel *per quod*.  As a result of all of these false statements, Mr. Brady has suffered, and will continue to suffer, injury in fact, including loss of good will and injury to his reputation.  The publication of the Article damaged Mr. Brady's reputation, will continue to harm his reputation, and will continue to impact Mr. Brady's business opportunities and any ongoing legal cases for the foreseeable future.

## THIRD CAUSE OF ACTION
## FALSE LIGHT INVASION OF PRIVACY

90.     Plaintiff repeats, reiterates and re-alleges the above paragraphs as though they were set-forth at length and in their entirety herein.

91.     A plaintiff alleging a false light claim must prove the following elements: a) that defendant published some information about the plaintiff; b) that the information must portray the plaintiff in a false or misleading light; c) that the information is highly offensive or embarrassing to a reasonable person; and d) that defendant published the information with reckless disregard for its offensiveness.

92.     A false light claim is usually easier to bring than a defamation claim because it involves allegations of false or misleading impressions rather than factual falsehoods or false statements.[1]

93.    Nicki Swift's September 30, 2022 clearly cast Brady in an untrue and unfair false light.  The usage of the word "guilty" alone is an error of fact but also a trigger word associated with criminal law intentionally used by Ms. Pavone to put Plaintiff is a false light and leave the reader with a negative impression based on libel of Mr. Brady.

## FOURTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

94.    Plaintiff repeats, reiterates and re-alleges the above paragraphs as though they were set-forth at length and in their entirety herein.

95.    The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *Hyatt*, 943 S.W. 2d at 297.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff James H. Brady respectfully requests that the Court grant the following relief:

---

1        Defamation vs. False Light: What Is the Difference?, *By Robert Rafii, Esq.* | *Legally reviewed by FindLaw Staff* | *Last reviewed June 30, 2023. https://www.findlaw.com/injury/torts-and-personal-injuries/defamation-vs--false-light--what-is-the-difference-.html#:~:text=The%20Elements%20of%20a%20False,embarrassing%20to%20a%20reasonable%20person*

a. Compensatory damages, including economic and non-economic damages, for reputation harm, emotional distress, and mental anguish caused the Defendants' false statements;

b. Punitive damages to deter Defendants 7Hops.com Inc, d/b/a Static Media, d/b/a Nicki Swift and Barbara Pavone for engaging in such intentional defamation, and from engaging in reckless and negligent journalistic activities;

c. Any other and further relief this Court deems just and proper.

## — JURY DEMAND —

Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

DATED:  September 28, 2023

Respectfully submitted,

James Brady, *Pro se Plaintiff*